UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STETSON REAL ESTATE LLC,

                          Plaintiff,

     v.

SENTINEL INSURANCE COMPANY,
LTD.,

                    Defendant.

No. 20-CV-8902 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Steven Kent, Esq.
Messner Reeve LLP
New York, NY
*Counsel for Plaintiff*

Alan W Borst, Jr, Esq.
Willie Borst ADR
Mamaroneck, NY
*Counsel for Plaintiff*

Sarah Gordon, Esq.
Charles Anthony Michael, Esq.
Steptoe & Johnson LLP
Washington, DC
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       Stetson Real Estate LLC ("Stetson" or "Plaintiff") brings this Action against Sentinel

Insurance Company, Ltd ("Sentinel" or "Defendant") for breach of contract under an insurance

policy for losses related to the COVID-19 pandemic.  (*See generally* Am. Compl. (Dkt. No.

31).)[1]  Before the Court is Defendant's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 57).)  For the reasons articulated below, Defendant's Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Amended Complaint and are assumed true for purposes of deciding the Motion.  *See Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2d Cir. 2018).

Plaintiff is a real estate agency owned and operated by Mary Stetson, located in the Village of Mamaroneck, New York ("Mamaroneck").  (*Id.* ¶ 9.)  Plaintiff maintains direct and co-brokered listings for over 100 residential properties located in Westchester and Fairfield Counties.  (*Id.*)  On July 6, 2019, Plaintiff entered into an insurance contract with Defendant, under which Plaintiff agreed to make premium payments in exchange for Defendant agreeing to insure and indemnify Plaintiff against loss (the "Policy").  (*Id.* ¶ 10.)  The Policy covered the period from July 6, 2019 through July 6, 2020.  (*Id.* ¶ 3.)

The Policy is an "all-risk" policy and provides coverage for loss resulting from a "covered cause of loss" unless the loss is excluded from or limited in the Policy.  (*Id.* ¶ 12.)  The Policy includes coverage for business income loss and extra expense incurred in the event of a suspension or interruption of business.  (*Id.* ¶ 10.)  The Policy also provides coverage for loss on "dependent properties," which are properties on which Plaintiff depends for its business.  (*Id.* ¶ 17.)  The Policy further provides "civil authority" coverage for loss "incurred when access to the

---

[1] The Court notes that Hartford Fire Insurance Company, previously named as a Defendant, was not listed as a Defendant in the Amended Complaint and was thus dismissed from this Action on February 26, 2021.  (*See id.*)

[insured] premises is specifically prohibited by order of civil authority." (*Id.* ¶ 18.)  According to Plaintiff, the Policy contains no virus exclusion and extends coverage for direct physical loss and/or property damaged caused by a virus unless excluded.  (*Id.* ¶¶ 13–14.)

On March 10, 2020, as the first wave of the COVID-19 hit, then-New York Governor Andrew Cuomo announced the discovery of a "virus cluster" in New Rochelle, New York, and declared a "containment zone" within a one-mile radius of the cluster.  (*Id.* ¶ 21.)  Some of Plaintiff's residential listings were located within the containment zone.  (*Id.*)  On March 16, 2020, Westchester County Executive Latimer issued a local state of emergency.  (*Id.* ¶ 29.)  As a result of the COVID-19 lockdown, Mary Stetson decided to leave the agency's storefront location in Mamaroneck and instead continued the operations of the business from her private home.  (*Id.* ¶ 25.)  Additionally, five of the agency's long-term real estate agents left the agency between March and July 2020, and the agency's receptionist relocated to South Carolina.  (*Id.*)  Mary Stetson continued to pay rent on the storefront location through May 31, 2020, and was unable to terminate the lease, even though her landlord claimed that the agency vacated the premises on April 1, 2020.  (*Id.* ¶¶ 26, 30.)

According to Plaintiff, "[t]he immediate impact of the COVID-19 pandemic and civil authority orders at the state and county level was to halt property visits and sales activity, as well as to eliminate the effectiveness of advertising, in and around [Plaintiff's] listing area."  (*Id.* ¶ 35.)  Additionally, Plaintiff allegedly "incurred extra expenses, [and] re-assigned employees to cleaning affected and damaged surface areas and property within [Plaintiff's] office . . . ."  (*Id.* ¶ 36.)  Plaintiff further claims that its office was "subjected to the physical presence of . . . COVID-19 causing agents attaching to fomite surfaces," which in turn allegedly damaged "surface areas, door handles, furniture, and office, computer and other business equipment" in

the office.  (*Id.* ¶ 43.)  These "fomites," defined as, "inanimate objects that, when contaminated with infectious or diseased agents, or when exposed to such agents, are known to cause direct physical loss and/or damage to property and/or individuals present in the immediate vicinity of such property," (*id.* ¶ 38), were allegedly also present "within properties located in the vicinity of the New Rochelle contamination zone," (*id.* ¶ 48).

Plaintiff submitted a claim to Defendant under the Policy, but Defendant denied Plaintiff's claim.  (*Id.* ¶¶ 49–50.)  Defendant explained that the COVID-19 did not cause physical damage at Plaintiff's office or dependent properties, and thus, the loss was not covered under the Policy.  (*Id.* ¶¶ 49–51, 54.)  The denial further explained that the "various state and local government mandated stay-at home orders . . . were issued to reduce the spread of the virus between individuals . . . [and] were not due to damage to property in the insured's immediate area."  (*Id.* ¶ 59.)

B.  Procedural History

Plaintiff filed this Action in the New York State Supreme Court in Westchester County on May 22, 2020.  (Dkt. No. 1-1.)  Defendant removed the case to federal court on October 23, 2020.  (Dkt. No. 1.)  On November 6, 2020, Defendant filed an Answer to the Complaint.  (Dkt. No. 7.)  On November 12, 2020, Plaintiff filed a letter seeking permission to submit a motion to remand this Action back to state court.  (Dkt. No. 9.)  On November 17, 2020, Defendant filed an Amended Notice of Removal.  (Dkt. No. 11.)  On January 11, 2021, the Court denied Plaintiff's request to file a remand motion.  (Dkt. No. 20.)  On February 26, 2021, Plaintiff filed an Amended Complaint.  (Dkt. No. 31.)  On March 12, 2021, Defendant filed an Answer to the Amended Complaint.  (Dkt. No. 32.)

On September 16, 2021, Defendant filed a letter outlining the grounds for its anticipated Motion for Judgment on the Pleadings and requesting a stay of discovery. (Dkt. No. 49.) Plaintiff sought leave to exceed the page limitation in its reply letter, which the Court granted, and filed said reply letter on September 21, 2021. (Dkt. Nos. 50–51.) On September 27, 2021, the Court granted Defendant's request to stay discovery. (Dkt. No. 53.) On October 27, 2021, the Court held a conference and adopted a briefing schedule for Defendant's Motion. (Dkt. No. 56.) On November 17, 2021, Defendant filed its Motion for Judgment on the Pleadings and accompanying papers. (Dkt. Nos. 57–59.) On December 21, 2021, Plaintiff filed its Opposition. (Dkt. No. 60.) On January 10, 2022, after seeking leave of Court, Plaintiff filed a supplemental letter brief to address recent Second Circuit developments. (Dkt. No. 64.) On January 20, 2022, Defendant filed its Reply. (Dkt. No. 65.)

## II.  Discussion

### A. Standard of Review

"The standard of review on a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as the standard of review applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Marte v. Safety Bldg. Cleaning Corp.*, No. 08–CV–1233, 2009 WL 2827976, at *1 (S.D.N.Y. Sept. 2, 2009); *see also L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011) ("In deciding a Rule 12(c) motion, we employ the same standard applicable to dismiss pursuant to Rule 12(b)(6)." (alterations and quotation marks omitted)).  The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

For the purpose of Defendant's Motion, the Court is required to consider as true the factual allegations contained in the Complaint.  *See Latner*, 879 F.3d at 54 ("We review a district court's order granting a defendant's motion for judgment on the pleadings de novo" and "accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party" (italics omitted)).  "[C]ourts may on a Rule 12(c) motion—just as on a Rule 12(b)(6) motion—consider extrinsic material that the complaint incorporate[s] by reference, that is integral to the complaint, or of which courts can take judicial notice . . . ."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (quotation marks omitted); *see also Smith v. City of New York*, No. 13–CV–2395, 2014 WL 4904557, at *3 (E.D.N.Y. Sept. 30, 2014) ("When deciding a motion on the pleadings, the court must confine its consideration to the

pleadings and their attachments, to documents . . . incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (alteration in original) (quotation marks omitted)). However, "[a] contract not attached to the pleadings may be considered incorporated by reference where a plaintiff's claim relies solely on its content." *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 504 (S.D.N.Y. 2021) (citing *I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991)).

    B. Analysis

        1. Business Income, Extra Expense & Dependent Property Coverage

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012) (footnote omitted). "[T]he initial interpretation of a contract is a matter of law for the court to decide" *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (quotation marks omitted). "[A]n insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). The "words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (alteration and quotation marks omitted). "When resolving disputes concerning the scope of coverage, [courts] look to the specific language in the relevant insurance policies." *WM Bang LLC v. Travelers Cas. Ins. Co. of Am.*, 559 F. Supp. 3d 225, 230 (S.D.N.Y. 2021) (quoting *Chen v. Ins. Co. of the State of Pa.*, 36 N.Y.3d 133, 139 N.Y.S.3d 579, 581 (N.Y. App. Div. 2020)). "Under New York law, 'a policyholder bears the

burden of showing that the insurance contract covers the loss.'"  *Id.* (quoting *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000)).

To determine the scope of the Policy's business income, extra expense, and dependent property coverage, the Court begins with the text of the relevant provisions.  First, respect to business income loss, the Policy states:

> We will pay for the actual loss of [b]usiness [i]ncome you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by *direct physical loss of or physical damage to property* at the '[insured] premises' . . . caused by or resulting from a [c]overed [c]ause of [l]oss.

(Decl. of Charles Michael, Esq. in Supp. of Def.'s Mot. for J. on the Pleadings ("Michael Decl.") Ex. A ("Policy") 41 (Dkt. No. 59-1) (emphasis added).)[2]  Second, regarding extra expense coverage, the Policy provides:

> We will pay reasonable and necessary [e]xtra [e]xpense you incur during the 'period of restoration' that you would not have incurred if there had been no *direct physical loss or physical damage to property* at the '[insured] premises' . . . caused by or resulting from a [c]overed [c]ause of [l]oss.

(*Id.* (emphasis added).)  Third, regarding coverage for business income loss to dependent property, the Policy states:

> We will pay the actual loss of [b]usiness [i]ncome you sustain due to *direct physical loss or physical damage* at the premises of a dependent property caused by or resulting from a [c]overed [c]ause of [l]oss.

(*Id.* at 42 (emphasis added).)

Plaintiff asks the Court to interpret the language "direct physical loss or physical damage"—language present in all three provisions—to include the risk of virus contamination. (*See generally* Am. Compl.; *see also* Letter from Alan W. Borst, Jr., Esq. to Court (Jan. 10,

---

[2] When referring to this Exhibit, the Court will use the ECF-stamped page numbers in the top right corner of each page.

2021) ("Pl.'s Supp'l Letter") 2 (Dkt. No. 64).)  Specifically, Plaintiff argues that the direct

physical loss and/or property damage is caused by the physical presence of COVID-19-causing

agents, "including by fomites formed, adhering and/or affixed to the surface areas of properties,

according to the present scientific literature, can be present and remain infectious." (Am. Compl.

¶ 75.)  Plaintiff explained that fomites are inanimate objects that when contaminated with

infectious agents, are known to cause "direct physical loss and/or damage to property." (*Id.* ¶

38.)  The fomites were allegedly formed when, for example, individuals infected with COVID-

19 breathed, coughed, sneezed, or otherwise orally projected aerosol mist or droplets into the air

within the Plaintiff's office.  (*Id.* ¶¶ 41, 42.)

     The overwhelming weight of caselaw from the Second Circuit and district courts within it

holds that loss of use of a property due to COVID-19 does not qualify as "physical loss or

damage."  *See, e.g.*, *10012 Holdings, Inc. v Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 221 (2d Cir.

2021) (noting that "state and federal courts in New York have . . . uniformly[,] since the start of

the COVID-19 pandemic[,] [] den[ied] coverage under similar insurance provisions where the

insured property itself was not alleged or shown to have suffered direct physical loss or physical

damage"); *Pac. Indem. Co. v. Kiton Corp.*, No. 21-CV-4391, 2022 WL 2292769, at *5 (S.D.N.Y.

June 24, 2022) (denying the plaintiff's claim because it failed to allege a "direct physical loss or

damage to property" and was thus "indistinguishable" from the Second Circuit's holding in

*10012 Holdings*); Block v. Hartford Underwriters Ins. Co., No. 20-CV-9302, 2022 WL 912944,

at *3 (S.D.N.Y. Mar. 29, 2022) ("Like *10012 Holdings*, Plaintiff seeks coverage for business

losses associated with government mandate closures as a result of the COVID-19 pandemic. . . .

Plaintiff's claims rests solely on the notion that physical loss should be interpreted as loss of use.

This reading of the policy provisions at issue runs contrary to New York law."); *Broadway 104,*

*LLC v. XL Ins. Am., Inc.*, No. 20-CV-3813, 545 F. Supp. 3d 93, 100 (S.D.N.Y. June 23, 2021) (finding that because the plaintiff had not alleged a "direct physical loss," it had not plausibly stated a covered loss under the policy); *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 414–15 (S.D.N.Y. June 11, 2021) (noting the "extensive case law that has developed in New York on this exact issue over the past year, which provides that loss of use caused by the COVID-19 pandemic is not physical damage"); *Deer Mountain Inn LLC v. Union Ins. Co.*, 541 F. Supp. 3d 235, 246 (N.D.N.Y. May 24, 2021) ("The [p]olicy's [b]usiness [i]ncome . . . [p]rovisions use the precise language that courts applying New York law have consistently held unambiguously does not cover mere 'loss of use' that is unconnected to any physical damage, alteration or compromise to the insured property."); *Rye Ridge Corp. v. Cincinnati Ins. Co.*, 535 F. Supp. 3d 250, 254–55 (S.D.N.Y. Apr. 23, 2021) ("The [c]omplaint alleges that COVID-19 caused a 'direct physical loss' of [the] [p]laintiffs' business premises, thus triggering the [p]olicies' [b]usiness [i]ncome coverage. The [c]omplaint fails to state a claim because, despite this conclusory allegation, the [c]omplaint pleads no facts to suggest that there was a 'physical loss or accidental physical damage' to the insured property as the [p]olicies require."); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, No. 20-CV-3350, 2021 WL 1034259, at *6 (S.D.N.Y. Mar. 18, 2021) ("Under New York law, it is unambiguous that (1) 'loss of' property does not encompass 'loss of use' of that property; and (2) insurance provisions that cover business interruption 'caused by direct physical loss of or physical damage to property' provide coverage only where the insured's property suffers direct physical damage." (quotation marks omitted)) (report and recommendation); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, 524 F. Supp. 3d 242, 247 (S.D.N.Y. Mar. 6, 2021) ("[T]he great majority of courts that have addressed this issue of insurance coverage for business losses sustained as a

10

result of COVID-19 restrictions have held that a complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss."); *DeMoura v. Cont'l Cas. Co.*, 523 F. Supp. 3d 314, 321 (E.D.N.Y. Mar. 5, 2021) ("New York courts have consistently understood identically worded insurance clauses to exclude business interruption losses from coverage when the losses were not caused by real, tangible damage to or loss of the property."); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 175–82 (S.D.N.Y. 2020) (dismissing breach of contract claims for business income coverage because the plaintiff failed to allege that the property was physically lost or damaged but instead centered his claims around the inability to fully use his restaurant which was insufficient as a matter of law).

Several other circuit courts have reached the same conclusion. *See, e.g.*, *Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (per curiam) (finding that the plaintiff "alleged noting that could qualify . . . as physical loss or damage" because the shelter-in-place order cited by the plaintiff "did not damage or change the property in a way that required its repair or precluded its future use"); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1145 (8th Cir. 2021) ("We reject [the plaintiff's] argument that the lost business income and the extra expense it sustained as a result of the suspension of non-emergency procedures [during the COVID-19 pandemic] were 'caused by direct loss to property.'"); *see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892–93 (9th Cir. 2021) (reaching same conclusion); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 404–07 (6th Cir. 2021) (same).

Plaintiff attempts to skirt this unfavorable caselaw by alleging that virus contamination actually caused "physical loss or damage" to the property. That is, Plaintiff argues that COVID-19 contamination in the form of "fomites" was physically present on its property and dependent

properties and thereby caused actual damage.  (*See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot.

("Pl.'s Opp'n) 16 (Dkt. No. 60); *see also* Am. Compl. ¶¶ 37–48.)  Although the Second Circuit

and other Circuits have found that "physical loss or damage" can occur when particulates or

other microscopic matter are physically present at a covered property, those cases are easily

distinguishable because "the particulates or other microscopic matter at issue [in those cases]

caused alterations to the property that persisted over time."  *Spirit Realty Capital, Inc. v Westport

Ins. Corp.*, 21-CV-2261, 2021 WL 4926016, at *7 (S.D.N.Y. Oct. 21, 2021); *see also Parks*, 472

F.3d at 36, 36 (noting that "particulate matter" resulting from the collapse of the World Trade

Center "penetrated the [covered property] and settled in its mechanical and electrical systems,"

causing physical damage); *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311

F.3d 226, 236 (3d Cir. 2002)) ("When the presence of large quantities of asbestos in the air of a

building is such as to make the structure uninhabitable and unusable, then there has been a

distinct loss to its owner.").

Here, by contrast, there is no allegation that COVID-19 "penetrated" the property or

rendered it "unhabitable."  *See Spirit Realty*, 21-CV-2261, 2021 WL 4926016, at *7.  Plaintiff

merely makes the conclusory allegation that the virus was present on surfaces in some of its

properties through fomites.  (*See, e.g.*, Am. Compl. ¶¶ 37, 39.)  The presence of the COVID-19

virus does not amount to "physical loss or damage" to Plaintiff's property or dependent

properties.  *See Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 117 (S.D.N.Y.

2021) ("[T]he [COVID-19] virus—unlike invisible fumes and chemicals—does not 'persist' and

irreversibly alter the physical condition of a property."); *see also 100 Orchard St., LLC v.

Travelers Indem. Ins. Co. of Am.*, 542 F .Supp. 3d 227, 229 (S.D.N.Y. 2021) ("[W]hile the

presence of COVID-19 may render property potentially harmful to people, it does not constitute

harm *to* the property itself.") (emphasis in original); *Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, 535 F. Supp. 3d 152, 159 (W.D.N.Y. 2021) ("The building itself remains unharmed by the virus and would be safe for occupancy except for the arrival of people who bring new sources of infection.").

In sum, loss of use of property due to COVID-19, as well as the presence of virus contamination, do not constitute "direct physical loss of or physical damage to property." Plaintiff therefore cannot recover under the business income loss, extra expense, or dependent property provisions of the Policy.

### 2. Civil Authority Coverage

Plaintiff next contends it is entitled to recovery under the Policy's civil authority provision. (Pl.'s Opp'n 20–22.) The civil authority provision of the Policy provides:

> This insurance is extended to apply to the actual loss of [b]usiness [i]ncome you sustain when access to your "[insured] premises" is specifically prohibited by order of a civil authority as the direct result of a [c]overed [c]ause of [l]oss to property in the immediate area of your "[insured] premises."

(Policy 42.) The term "[c]overed [c]ause of [l]oss" is defined in the Policy is defined as "risk of direct physical loss" unless the loss is excluded or limited by other provisions in the Policy. (*Id.* at 33 (capitalization omitted).)

Plaintiff concedes that the civil authority orders here "did not cause the [Plaintiff's] business interruption," but instead argues that "they may have extended it to the extent [Mary] Stetson could not return to her premises and to the extent they prevented the local real estate industry from visiting and showing residential listings in person." (Pl.'s Opp'n 21). This argument is unpersuasive.

Courts within the Second Circuit have consistently dismissed COVID-19 claims for civil authority coverage on the grounds that the orders in question did not cause "risk of direct

13

physical loss" to neighboring properties, as required by the Policy.  *See, e.g.*, *Camp 1382 LLC v. Lancer Ins. Co.*, No. 20-CV-3336, 2022 WL 1406152, at *3–4 (S.D.N.Y. May 4, 2022) ("[The] [p]laintiff has [] failed to plausibly allege . . . a 'risk of direct physical loss,' which is required to trigger [c]ivil [a]uthority coverage.  Accordingly, [the] [p]laintiff's arguments are precluded by the Second Circuit's decision in *10012 Holdings*."); *John Gore Org., Inc. v. Fed. Ins. Co.*, No. 21-CV-2200, 2022 WL 873422, at *13 (S.D.N.Y. Mar. 23, 2022) (finding that "[the] [p]laintiff's allegations regarding the presence of COVID-19 in or near its premises are not adequate to state a claim" for civil authority coverage); *Poughkeepsie Waterfront Development, LLC v. Travelers Indem. Co. of Am. et al.*, No. 20-CV-4890, 2021 WL 4392304, at *2 (S.D.N.Y. Sept. 24, 2021) ("[T]he [c]omplaint fails to allege facts that would establish the critical elements for [c]ivil [a]uthority coverage, including that the [o]rders prohibited access to [p]laintiff's [p]roperty and that the [o]rders were issued in response to prior direct physical loss of or damage to property other than the insured premises that was caused by a [c]overed [c]ause of [l]oss."); *WM Bang LLC*, 559 F. Supp. 3d at 234 ("By failing to plead that neighboring properties suffered any physical loss, [the] [p]laintiffs have not met their burden to show they are entitled to [c]ivil [a]uthority [c]overage under the [p]olicy.  This is consistent with the other decisions in this District regarding this same issue."); *Kim-Chee*, 535 F. Supp. 3d at 162 ("[The] [p]laintiffs cannot satisfy the requirements for [civil authority] coverage.  Devastating as the closure has been to [the] [p]laintiffs and thousands of other businesses, [the] [p]laintiffs cannot provide specific, non-general allegations that document a direct physical injury to property . . . that gave rise to the civil authority orders.  They do not allege that the executive orders were triggered by 'direct physical loss or damage to other property.'  They allege something less: 'The [civil authority] [o]rders prohibited access to the covered properties as a result of the damage and the

ongoing and continuous loss and damage resulting from the [COVID-19] [v]irus.'"); *Food for Thought Caterers*, 524 F. Supp. 3d at 250 (holding that to be entitled to civil authority coverage the order "would need to be a direct result of a [c]overed [c]ause of [l]oss to property in the immediate area of [the insured] premises" and ruling that the plaintiff "has failed to trigger coverage under the [p]olicy's [c]ivil [a]uthority provision," including because "the [a]mended [c]omplaint fails to allege that the civil authority orders prohibiting access to the plaintiff's property were caused by risks of direct physical loss to property in the surrounding area" (quotation marks omitted)); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.,* 507 F. Supp. 3d 482, 488–489 (S.D.N.Y. Dec. 15, 2020) (concluding that "[the] [p]laintiff was forced to close for the same reason as its neighbors—the risk of harm to individuals on its own premises due to the pandemic. Put differently, the [c]omplaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of [the] [p]laintiff's properties"); *Michael Cetta*, 506 F. Supp. 3d at 183 (denying civil authority coverage where the plaintiff failed to allege any specific damage to any neighboring properties).

In sum, the case law in this District is clear: civil authority coverage is triggered by actions of civil authority taken in response to direct physical loss of or damage to nearby property. Plaintiff alleges that "[d]ependent [p]roperties located in the New Rochelle containment zone sustained direct physical loss and/or property damage, and/or were shut down by order of Governor Cuomo from public access in order to prevent further direct physical loss and/or property damage," and that "access to [Plaintiff's] business premises was later prohibited and/or suspended by the County Executive order declaring a state of emergency in Westchester County," but such allegations are plainly insufficient to warrant coverage under the Policy. (Am. Compl. ¶¶ 85–86); *see Sharde Harvey*, 2021 WL 1034259, at *9 ("COVID-19 damages lungs,

not property.").  Plaintiff therefore cannot recover under the civil authority provision of the Policy.

### III. Conclusion

For the reasons articulated above, Defendant's Motion is granted, and Plaintiff's Amended Complaint is therefore dismissed with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *cf. Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and quotation marks omitted)).

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 57), and close this case.

SO ORDERED.

DATED:      July 5, 2022
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE